PARKVIEW HOSPITAL, APPELLANT, *v.* THE HOSPITAL SERVICE ASSN. OF TOLEDO, APPELLEE.

[Cite as Parkview Hospital v. Hospital Service Assn., 7 Ohio App. 2d 111]

(No. 7942—Decided August 2, 1966.)

*Messrs. Chastang & Carroll* and *Messrs. Doyle, Lewis & Warner,* for appellant.

*Messrs. Reams, Bretherton & Neipp* and *Mr. Robert Dorrell,* for appellee.

DUFFEY, J. This is an appeal on questions of law from a declaratory judgment granted by the Common Pleas Court of Franklin County. The action involves the interpretation of the "rate formula" provision of Section 1739.06, Revised Code. The plaintiff below was Parkview Hospital of Toledo, and the defendant below was The Hospital Service Association of Toledo. Both parties filed notices of appeal and these appeals have been consolidated by the court under docket No. 7942. Since each party is both an appellant and an appellee, the opinion will refer to "Parkview" and the "association."

Parkview seeks a declaration as to whether it is being paid for services to Blue Cross subscribers of the asociation "on the basis of the same rate formula as the association uses in determining rates to be paid for similar care to other nonprofit hospitals located in the same area." Section 1739.06, Revised Code. Parkview contends that the rate formula being applied to it is in violation of that statute.

The parties duly executed a hospital care contract. Defendant's exhibit No. 1. That contract established a rate formula, which is set forth in an exhibit "C" which was incorporated into and made a part of the contract. Defendant's exhibit No. 2 was identified and introduced as that exhibit "C" of the contract, and, therefore, as the rate formula agreed to by. Parkview.

In essence, the rate formula set by the contract calls for Parkview to be paid by the association a per diem rate of 97 per cent of its billed charges to a subscriber patient for covered services, but subject to three ceilings:

(1) Payment shall "not exceed 105% of in-patient reimbursable cost" less noncontract services. Exhibit No. 2, paragraph 1 a.

(2) An increase in reimbursable cost in any semi-annual period shall not exceed one and one-half the weighted average increase of all member hospitals, i. e., those contracting with the association for hospital care. Exhibit No. 2, paragraph 1 b.

(3) "No Cooperating Hospital shall be paid at a per diem rate higher than the highest per diem paid to a Participating Hospital." Exhibit No. 2, paragraph 1 c (4).

Parkview does not challenge the 105 per cent ceiling provision and agrees that that portion of the formula has been properly computed by the association. The limitation on semi-annual cost increase has not been applicable to Parkview and has not been an issue in this action. The controversy revolves. entirely around the third ceiling limiting the per diem rate to' that of the highest participating hospital.

There is no explicit definition in the contract of the terms· "participating hospital" and "cooperating hospital." Paragraph 4 of the contract (defendant's exhibit No. 1) provides:

"The Hospital shall have none of the rights or obligations of the Participating Hospitals referred to and defined in the

Inter-Hospital Agency Contract, dated October 10, 1950, by the said Participating Hospitals and the Service Association. However, in determining whether, and in what amount, funds are available for payment to the Hospital under the provisions of Paragraph 3 hereof, all hospitals which are parties to said Inter-Hospital Agency Contract and all hospitals which are parties to any contract similar to this contract shall be considered on a parity.''

Reference to the Inter-Hospital Agency Contract is also found in paragraph 8 of the rate formula (defendant's exhibit No. 2).

Uncontradicted testimony identifies defendant's exhibit No. 3 as the Inter-Hospital Agency Contract referred to in Parkview's contract, and specifically in paragraph 1 c (4) of the rate formula. Thus a ''participating hospital'' within the meaning of Parkview's contract refers to a hospital which has contracted with the association under the Inter-Hospital Agency Contract. The testimony also clearly established that a ''cooperating hospital'' within the meaning of the contract is one which has a hospital care contract with the association, but which is not a party to the Inter-Hospital Agency Contract.

Parkview concedes that it has never executed or otherwise become a party to the association's Inter-Hospital Agency Contract. Therefore, Parkview is not a ''participating hospital,'' and it is a ''cooperating hospital'' as those terms are used in paragraph 1 c (4) of the rate formula. Accordingly, under its contract, Parkview's per diem payments cannot exceed the highest paid to a member hospital which is a party to the Inter-Hospital Agency Contract. The issue is whether that contract limitation, even though agreed to by Parkview, is a violation of the statutory requirement that contracting hospitals be paid ''on the basis of the same rate formula.''

In the present case, Parkview's per diem rate exceeded the highest per diem paid to a ''participating hospital.'' Under the formula ceiling, it is necessarily true that Parkview received the same amount of money for the same services as did that participating hospital, and that Parkview's contract payment was more than that of any other participating hospital, and at least as much as any co-operating hospital.

The base of the formula rests upon percentages, i. e., 97 per

cent-105 per cent. Obviously, it is desirable to impose an upper limit or maximum on the association's liability. The association might have established a fixed dollar maximum for each service in the subscriber contract, *i. e.*, not to exceed $10 per patient per day for postnatal care, or $15 for appendectomy, etc. Instead, the Toledo association chose a flexible maximum. It might have chosen to use an average based upon the operations of all contracting hospitals. Instead, it chose to establish a ceiling based upon the operations of some, but not all, contracting hospitals. In our opinion, such a ceiling does not invade any right granted to Parkview by Section 1739.06, Revised Code.

Section 1739.06, Revised Code, does not afford any general protection to contracting hospitals. It does not impose any general obligations of reasonableness or nondiscrimination upon an association in its dealings with hospitals. The statutory requirement is concerned only with *payment for services rendered*. From the viewpoint of an equal basis of payment alone, it can make no difference whether the ceiling is tied to one member hospital or a group. It would make no difference whether the regulator was selected for actuarial reasons, hospital administration or medical policy.

Parkview's complaint would seem to be that by selecting the "participating" hospitals for a ceiling regulator, the association is not permitting the ceiling to reflect the operating costs of Parkview and other "cooperating" hospitals. Parkview also emphasizes that the "participating" hospitals control admission to their group, and apparently exercise dominant influence upon the association. However, even if this is true, it does not affect any legal right of Parkview.

Parkview's rights are those under its hospital care contract, and those granted by Chapter 1739, Revised Code. The arrangements between the "participating" hospitals and the association do not deprive Parkview of its right to have a hospital care contract, nor do they deprive Parkview of an equal basis for payment under that contract. These two rights are the only ones granted to a hospital by Section 1739.06, Revised Code.

It may be that the association is using the rate formula to discriminate against Parkview in some manner. No doubt an

association could manipulate factors in its formula so as to affect various aspects of hospital administration, medical policy, etc. However, Chapter 1739, Revised Code, is primarily an incorporation law. Subscribers, hospitals and the public must rely in large part upon freedom of contract, the hospital advisory committees, the association's board of trustees, and the effect of competition from other hospital care systems.

It should be said that there is no evidence and Parkview does not claim that admission to the Inter-Hospital Agency Contract has ever been exercised with an intent to injure Parkview, osteopathic medicine, or the public interest in general.

The association has appealed a determination that Parkview need not refund payments in excess of the formula ceiling for the year 1961. Upon review of the record, we can find no basis in the pleadings or in the evidence for the trial court's determination that the association was guilty of ''laches'' in applying its formula ceiling. We fail to see how ''laches'' can even be a defense to the fulfillment of Parkview's contract obligations. The association's appeal on that issue will be sustained.

The judgment of the Common Pleas Court will be modified by removing paragraph four, and, as so modified, will be affirmed.

*Judgment modified and, as modified, affirmed.*

BRYANT, P. J., concurs.
DUFFY, J., dissents.

DUFFY, J., dissenting. I dissent because I believe the formula discriminates against a contracting hospital.